**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ASIAN COMMERCE CENTER PROPERTY OWNER ASSOCIATION,** | § | |
| *Plaintiff*, | § | |
| V. | § | **CIVIL ACTION NO. 4:25-cv-03694** (JURY) |
| **OHIO SECURITY INSURANCE COMPANY,** | § | |
| *Defendant*. | § | |

**DEFENDANT OHIO SECURITY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendant Ohio Security Insurance Company, ("Ohio" or "OSIC") files this Motion for Summary Judgment and in support thereof states as follows.

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.

By: */s/Kolby J. Keller*
Jonathan R. Peirce
State Bar No. 24088836
Federal Bar No. 2303246
THOMPSON COE COUSINS & IRONS, LLP
4400 Post Oak Parkway, Suite 1000
Houston, Texas 77027
Telephone: (713) 403-8210
jpeirce@thompsoncoe.com

~and~

Kolby J. Keller
State Bar No. 24119382
Federal Bar No. 3676114
kkeller@thompsoncoe.com
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201
Telephone: (214) 871-8200
Facsimile: (214) 871-8209

**ATTORNEYS FOR DEFENDANT**

# TABLE OF CONTENTS

I. STATEMENT OF THE UNDISPUTED FACTS ..... 1

II. STATEMENT OF THE ISSUES ..... 5

III. SUMMARY JUDGMENT EVIDENCE ..... 6

IV. SUMMARY JUDGMENT STANDARD ..... 7

V. ARGUMENT & AUTHORITIES ..... 8

A. Plaintiff cannot meet its burden of proving Hurricane Beryl caused the damages it seeks and as a result its breach of contract and bad faith claims fail. ..... 8

B. OSIC is Additionally and Independently Entitled to Summary Judgment of Plaintiff's Bad Faith Claim because the Dispute is at Most a *Bona Fide* Coverage Dispute. ..... 10

C. Plaintiff's Claims under the Prompt Payment of Claims Act Fail ..... 14

CONCLUSION ..... 15

CERTIFICATE OF SERVICE ..... 17

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arnold v. National County Mut. Fire Ins.*,
725 S.W.2d 165 (Tex. 1987)....11

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986)....8

*Clark v. America's Favorite Chicken*,
110 F.3d 295 (5th Cir. 1997)....8

*Employers Casualty Co. v. Block*,
744 S.W.2d 940 (Tex. 1988), *overruled in part on other grounds by State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696 (Tex. 1996)....8

*Hamilton Props. v. Am. Ins. Co.*,
643 Fed. App'x 437 (5th Cir. 2016)....9

*Higginbotham v. State Farm Mut. Auto Ins. Co.*,
103 F.3d 456 (5th Cir. 1997)....11

*Humphries v. State Farm Lloyds*,
No. 3:20-CV-01163, 2022 WL 705860 (N.D. Tex. Mar. 9, 2022)....12

*Kahlden v. Safeco Ins. Co. of Ind.*,
No. H-10-2001, 2011 U.S. Dist. LEXIS 168134 (S.D. Tex. 2011)....13, 14

*Little v. Liquid Air Corp.*,
37 F.3d 1069 (5th Cir. 1994)....7

*Lyons v. Millers Cas. Ins. Co. of Tex.*,
866 S.W.2d 597 (Tex. 1993)....8, 12

*Main St. Baptist Church v. Church Mut. Ins. Co.*,
No. 6:23-CV-124-JDK, 2024 WL 4101938 (E.D. Tex. July 23, 2024)....13

*MatsushitaElec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574, 106 S.Ct. 1348, 1986 L.Ed. 38 (1986)....8

*Nat'l Union Fire Ins. Co. of Pittsbugh, Pa. v. Puget Plastics Corp.*,
735 F. Supp. 2d 650 (S.D. Tex. 2010)....9

*Nino v. State Farm Lloyds*,
No. 7:13-CV-318, 2014 U.S. Dist. LEXIS 163993 (S.D. Tex. 2014)....13

*Nino v. State Farm Lloyds*,
No. 7:13-CV-318, 2014 WL 6674418 (S.D. Tex. Nov. 24, 2014) ............................12, 13, 14

*State Farm Lloyds v. Nicolau*,
951 S.W.2d 444 (Tex. 1997)..........................................................................................12

*Transportation Ins. Co. v. Moriel*,
879 S.W.2d 10 (Tex. 1994)........................................................................................11, 12

*USAA Tex. Lloyds Co. v. Menchaca*,
545 S.W.3d 479 (Tex. 2018)..........................................................................................10

*Viles v. Sec. Nat'l Ins. Co.*,
788 S.W.2d 566 (Tex. 1990)..........................................................................................12

*Wallis v. United Servs. Auto. Ass'n*,
2 S.W.3d 300 (Tex. App.-San Antonio 1999, pet. denied)..............................................8

*Wright v. Ford Motor Co.*,
508 F.3d 263 (5th Cir. 2007) ...........................................................................................8

**RULES**

FED. R. CIV. P. 56(c)..................................................................................................7, 8

Federal Rules of Civil Procedure Rule 56 ........................................................................7

**STATUTES**

CLAIMS ACT ...................................................................................................................15

Texas Insurance Code Chapters 541 and 542 ................................................................14

Texas Insurance Code or Deceptive Trade Practices Act Section 542.058 ...............................6, 15

## I. STATEMENT OF THE UNDISPUTED FACTS

***The Property***

1. This case arises out of a first-party insurance dispute between Plaintiff Asian Commerce Center Property Owner Association (Plaintiff) and Defendant OSIC arising out of alleged property damage caused by a July 8, 2024 storm.

2. OSIC issued Policy No. BKS 615921905 to Plaintiff Asian Commerce Center Property Owner Association for the policy period beginning on June 19, 2023 to June 19, 2024. The policy provided coverage for the Property, subject to all terms, conditions, limitations and exclusions therein. **Exhibit A.** The property is a two story building with multiple units on each floor. The alleged damage to the property caused by Hurricane Beryl on July 8, 2024 forms the basis of this lawsuit.

***The Claim***

3. On August 29, 2024, Tina Vy ("Vy"), an agent for Plaintiff, reported a claim for damage to the Property's roof, exterior wall elevations, and interior due to leaks allegedly caused by Hurricane Beryl which occurred on July 8, 2024. Ohio promptly acknowledged the claim in writing on August 30, 2024, and assigned it to adjuster James Thomas ("Mr. Thomas").

4. On September 9, 2024, in response to an inquiry from Ms. Delgado with law firm National Insurance Advocates ("NIA"), Mr. Thomas requested a letter of representation, which Ms. Delgado provided the same day. ***See* Exhibit D.** This letter, dated August 23, 2024, included a loss notice, notice of representation, and contact information.

5. On September 18, 2024, Mr. Thomas inspected the property and on September 27, 2024, based on the inspection findings, Mr. Thomas completed a repair estimate totaling $101,059.12

(replacement cost value "RCV"). ***See*** **Exhibit E**. This estimate included the damage to the exterior EIFS, the brick portions of the structure, windows, and framing on the right elevation.

6. On October 6, 2024, Ohio issued a partial denial letter and issued payment in the amount of $9,361.67. This letter outlined the coverage for the items included in Mr. Thomas' estimate, while declining coverage for the brick damage observed on several elevations. The denied damage was determined to be caused by wear, tear, deterioration, settling, and cracking. ***See*** **Exhibit F & G**. Additionally, Ohio extended coverage for the interior damage to the ceiling drywall within the elevator mechanical room. However, they denied coverage for the observed water leak on the wall sheathing below the windows in the enclosed area just above the elevator shaft. This leak was attributed to repeated seepage or leakage of water for 14 days or more and/or wind-driven rain. No storm-created openings were found in the enclosed area. *Id*.

7. On December 4, 2024, Ohio received an estimate for roof replacement from Plaintiff, completed by Restore Zone, totaling $2,005,226.09. On December 10, 2024, Ohio informed Ms. Delgado that the claim had been transferred from Mr. Thomas to a new adjuster, Christopher Alvarez ("Mr. Alvarez"). Mr. Alvarez requested available dates to conduct a reinspection of the property from both the general contractor who prepared the roof replacement estimate and Ms. Delgado.

8. On December 11, 2024, Ms. Delgado inquired about the claim payment, which had not arrived. Mr. Alvarez responded the same day, explaining that payment had been issued on October 7, 2024, was in the amount of $9,361.67, payable to the Asian Commerce Property Owner Association and NIA.

9. On December 12, 2024, Mr. Alvarez emailed Ms. Delgado to propose a reinspection date for the following Wednesday and requested the attendance of representatives of Restore Zone and

NIA to answer any questions regarding the property and any previous repairs completed on the property.

10. On December 16, 2024, Mr. Alvarez requested to reschedule the inspection, initially due to scheduling conflicts with Mike Freestone with DBI and Drit Sokoli with Thornton Tomasetti. On December 18, 2024, Ms. Delgado confirmed with the insured that they had not received the check for $9,361.67 and requested that it be reissued. On the same day, Mr. Alvarez reissued the check at Ms. Delgado's request and informed her that Ohio's engineer would be available on January 8, 2025, at 9:00 AM.

11. Ohio sent a letter requesting information about the property on January 3, 2025 and requested that the information be provided as soon as possible to allow sufficient time for review before the scheduled site inspection on January 8, 2025. ***See* Exhibit H.**

12. DBI and Thornton inspected the property as scheduled without the presence of the Insured, opposing counsel, or the property manager despite OSIC's request. The inspection covered both the exterior and interior of the tenant-occupied units; however, most of these units were vacant, preventing DBI and Thornton from accessing/inspecting those units. ***See* Exhibits I & J**.

13. Following the inspection, on January 13, 2025, Ms. Delgado informed Mr. Alvarez that Restore Zone was never contracted by the client and, as a result, no mitigation services were performed. Based on the damage submitted by Plaintiff, Thornton Tomasetti recommended that Mr. Alvarez approve a supplemental inspection by an HVAC engineer to assess the rooftop HVAC units. That inspection took place on January 29, 2025. ***See* Exhibit K.**

14. On February 10, 2025, Mr. Alvarez responded to Ms. Delgado, informing her that the expert reports were currently under review and that he would keep her updated. On February 18, 2025, Mr. Alvarez informed Ms. Delgado that the engineer's reports would be completed by Friday,

and he would reach out to her then to discuss the claim. DBI completed its estimate on February 24, 2025, based on the engineering report and findings. ***See* Exhibit L.**

15. On March 10, 2025, Ohio received a DTPA notice from NIA concerning Plaintiff's intent to sue and demanded payment of the amount stated in the Restore Zone estimate, totaling $2,005,226.09, excluding statutory penalties, interest, attorneys' fees, and other remedies available under Texas law. ***See* Exhibit M**.

16. Ultimately, Plaintiff disagreed with OSIC's coverage decision and filed this lawsuit on June 20, 2025.

***Prior Claims & Repairs***

17. The property has had significant prior damage that overlaps with the claimed damage in this claim, and there is significant evidence that the claimed damage in this lawsuit was not caused by Hurricane Beryl on July 8, 2024.

18. In May 2021 Plaintiff filed a claim for damage to window framing and the brick wall. ***See* Exhibit N email produced by Plaintiff during discovery** at pg. 1.

19. In April 2024, Plaintiff submitted a claim for interior water damage to Unit 208 caused by an attempted break-in which resulted in a fire that triggered the fire sprinklers, causing water damage to both 208 and 108. ***See* Exhibit O** at pgs. 108-263.

20. Natural Roofing Repair, a contractor who had previously performed work at the property responded to a subpoena by producing documents reflecting numerous repairs and issues to the property's exterior, roof and interior leaking. In particular, the documents show:

- December 5, 2022 an invoice shows, the roof cap joints, and copping metal joints needed to be sealed above Unit 205 & 206. Above unit 204 8 leaks needed to be repaired along with sealing roof cap joints, repairing four drains, and sealing around exposed joints around two A/C Units. ***See* Exhibit P** at pg. 18.

- February 6, 2023 above Unit 208: there was interior leaking at a joint in a 10'x14' area and the roofing membrane needed to be glued to the concrete wall. ***See*** **Exhibit P** at pg. 10.

21. Texas George Realty, the property manager who was asked to respond to the request for information during the claims handling of this claim for the first time in response to the subpoena in addition to the Natural Roof Repair invoices above, produced documents showing other prior repairs to the property's roof & exterior.

- May 3, 2016, all of the joints on the wall were sealed from top to bottom along with the peace pan on the roof, which helped the leak to decrease but as it continued to rain the leaking continued ***See*** **Exhibit Q** at pg. 10 & 12.

- October 29, 2019 JWTT Inc repaired "leaking and fall down sheetrock materials and labor" in Unit 103. ***See*** **Exhibit Q** at pg. 28-29.

- September 18, 2023 JWTT Inc. repaired the roof above Unit 208. *See* **Exhibit Q** at pg. 21.

22. Jacobson Associates LLC in response to a subpoena produced documentation showing on April 9, 2024, Unit 208 had an attempted break-in which resulted in a fire that caused the fire sprinklers to trigger which caused water damage to Unit 208 and below Unit 108, as well as the elevator alarm panel located in the elevator shaft. ***See*** **Exhibit R** at pg. 28 & **Exhibit S** at pg. 230-239.

## II. STATEMENT OF THE ISSUES

**1) Under Texas law, an insured is only entitled to recover that portion of the damage caused solely by the covered peril when covered and non-covered perils combine to create a loss. Has Plaintiff presented evidence segregating its damages between the covered and non-covered, or excluded, causes of loss?**

**2) Additionally, Plaintiff's various claims sounding in bad faith require proof that OSIC committed an independent tort in the handling of the claim, and that there was no reasonable basis for its coverage decision. Plaintiff cannot meet this burden. At most, Plaintiff can show there is an ongoing dispute between the parties concerning the cause and scope of the claimed damage. A bona fide dispute does not rise to the level of bad faith; thus Plaintiff's bad faith claims fail as a matter of law.**

3) **Finally, Plaintiff cannot meet its burden to establish any violations under Section 542.058 of the Texas Insurance Code or Deceptive Trade Practices Act, thus OSIC is entitled to summary judgment on those claims as well.**

4) **OSIC is therefore entitled to summary judgment on all claims asserted by Plaintiff in this lawsuit. OSIC respectfully asks this Court to grant summary judgment on all claims and dismiss this lawsuit in its entirety.**

## III. SUMMARY JUDGMENT EVIDENCE

23. In support of this Motion for Summary Judgment, OSIC relies upon and incorporates by reference that following materials that are or could be presented in a form that would be admissible evidence:

**Exhibit A:** **Policy**

**Exhibit B:** **August 29, 2024 First Notice of Loss**

**Exhibit C:** **August 30, 2024 Claim Acknowledgement**

**Exhibit D:** **NIA Letter of Representation Dated August 23, 2024**

**Exhibit E:** **OSIC Estimate Dated September 27, 2024**

**Exhibit F:** **OSIC Coverage Letter Dated October 6, 2024**

**Exhibit G:** **OSIC Payment Email October 6, 2024**

**Exhibit H:** **Request for Information Letter Dated January 3, 2025.**

**Exhibit I:** **OSIC Photo Sheet Dated January 9, 2025**

**Exhibit J:** **Engineering Building Envelope Report**

**Exhibit K:** **Engineering HVAC Report**

**Exhibit L:** **DBI Estimate**

**Exhibit M:** **NIA Notice Letter Date March 10, 2024**

**Exhibit N:** **May 21, 2021 Email for damage to window and brick.**

**Exhibit O:** **Photos from April 2024 Water Claim**

**<u>Exhibit P</u>:** **Documents from Natural Roofing**

**<u>Exhibit Q</u>:** **Documents from Texas George Realty**

**<u>Exhibit R</u>:** **Documents from Jacobson & Associates**

**<u>Exhibit S</u>:** **Documents from Jacobson & Associates**

**<u>Exhibit T</u>:** **Deposition of Sean Fee**

**<u>Exhibit U</u>:** **Deposition of Jim Irmiter**

## IV. <u>SUMMARY JUDGMENT STANDARD</u>

24. Summary judgment is proper when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Moreover, Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986).

25. Once the moving party meets its initial burden of pointing out the absence of a genuine issue for trial, the burden is on the nonmoving party to come forward with competent summary judgment evidence establishing the existence of a material factual dispute. FED. R. CIV. P. 56(c); *Clark v. America's Favorite Chicken,* 110 F.3d 295 (5th Cir. 1997) (citation omitted). Inferences favorable to the party opposing the motion are drawn. *Wright v. Ford Motor Co.,* 508 F.3d 263, 274 (5th Cir. 2007). However, the nonmovant's burden is not satisfied with "some metaphysical

doubt as the material facts." *MatsushitaElec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1986 L.Ed. 38 (1986); *Wright,* 508 F.3d at 274

## V. ARGUMENT & AUTHORITIES

### A. PLAINTIFF CANNOT MEET ITS BURDEN OF PROVING HURRICANE BERYL CAUSED THE DAMAGES IT SEEKS AND AS A RESULT ITS BREACH OF CONTRACT AND BAD FAITH CLAIMS FAIL.

26. To recover under an insurance policy, an insured must plead and prove facts showing its damages are covered by the policy. *See Employers Casualty Co. v. Block,* 744 S.W.2d 940, 944 (Tex. 1988), *overruled in part on other grounds by State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696, 714 (Tex. 1996). "When covered and excluded perils combine to cause an injury, the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage." *Lyons v. Millers Cas. Ins. Co. of Tex.,* 866 S.W.2d 597, 601 (Tex. 1993). Under this rule, called the concurrent cause doctrine, the insured has the burden of segregating the damage attributable solely to the covered event from other damages. *See Wallis v. United Servs. Auto. Ass'n,* 2 S.W.3d 300, 303 (Tex. App.-San Antonio 1999, pet. denied).

27. "Failure to provide evidence upon which a jury or court can allocate damages between those that resulted from covered perils and those that did not is fatal to an insured party's claim." *Nat'l Union Fire Ins. Co. of Pittsbugh, Pa. v. Puget Plastics Corp.,* 735 F. Supp. 2d 650, 669 (S.D. Tex. 2010); *Hamilton Props. v. Am. Ins. Co.,* 643 Fed. App'x 437, 442 (5th Cir. 2016) (affirming summary judgment for insurer where insured showed the damage could be "linked" to a particular storm but did "nothing to enable a jury to segregate damages for only that property damage caused by covered perils that occurred within the policy period").

28. Plaintiff cannot meet its burden to segregate the damage attributable solely to the July 8, 2024 hurricane from other damages. Plaintiff has produced documents showing repairs to the

property's roof. Documents received in responses to subpoenas show evidence of prior roof repairs, ongoing leaks, and other issues as early as 2016. There are prior claims showing the same or similar damage.

29. Further, Plaintiff's retained experts, Mr. Fee, testified: (1) that he did not review any historical imagery in forming his opinion because it was not relevant enough to include in the report;[1] (2) he related all of the claimed damages to Hurricane Beryl;[2] (3) he did not know the condition of the roof prior to July 8, 2024 except that there were not reported leaks just prior to the storm event;[3] (4) he was not aware of how many patch repairs were made to this roof prior to inspecting the property;[4] (5) he observed de-bonded parts of the roof but could not attribute every de-bonded part to Hurricane Beryl;[5] and (6) some areas of the un-bonded or never bonded areas of the roof were attributable to improper installation.[6]

30. The same goes for Mr. Irmiter, who testified: (1) that he failed to include the historical imagery he reviewed in forming his opinion because it was not pertinent to the file;[7] (2) he did not review any maintenance records;[8] (3) he cannot dispute Mr. Fee's testimony attributing the unbonded sections of the roof to improper installation or maintenance of the building but he personally did not see that deficiency;[9] (4) he failed to do any analysis to determine how far away the recorded wind speeds on July 8, 2024 were from Plaintiff's property;[10] (5) other than speaking with the property manager who is not an insured, he failed to do any independent analysis to

[1] *See* Exhibit T Deposition of Sean Fee at 87:8-12
[2] *See* Exhibit T Deposition of Sean Fee at 88:15-17
[3] *See* Exhibit T Deposition of Sean Fee at 106:13-25.
[4] *See* Exhibit T Deposition of Sean Fee at 107:18-25.
[5] *See* Exhibit T Deposition of Sean Fee at 108:8-20.
[6] *See* Exhibit T Deposition of Sean Fee at 109:4-23.
[7] *See* Exhibit U Deposition of Jim Irmiter at 87:8-12
[8] *See* Exhibit U Deposition of Jim Irmiter at 78:7-17.
[9] *See* Exhibit U Deposition of Jim Irmiter at 84:2-24.
[10] *See* Exhibit U Deposition of Jim Irmiter at 105:1-25.

determine if any of the interior damage was associated with any other cause of loss including the April 2024 fire suppression water claim;[11] and (6) he related all of the claimed damages to Hurricane Beryl.[12]

31. Thus, Plaintiff cannot meet its burden to segregate covered damages from the July 2024 Hurricane from other covered and non-covered damages sustained on another date. Plaintiff therefore cannot satisfy the causation element of its breach of contract claim, and OSIC is entitled to summary judgment on the breach of contract claim.

32. Because Plaintiff cannot meet its burden on causation, Plaintiff's bad faith claims also fail. Generally speaking, "an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy." *USAA Tex. Lloyds Co. v. Menchaca,* 545 S.W.3d 479, 490 (Tex. 2018). Further, none of the exceptions identified by the Supreme Court in *Menchaca* apply here--Plaintiff has not pleaded, nor could it prove, benefits-lost or independent injury. *See id.* at 497-500. In other words, since Plaintiff's failure to meet its burden on causation means no benefits are owed under the policy, Plaintiff cannot satisfy the damages element of its bad faith claims. In other words, Plaintiff cannot recover on its bad faith claims *even if it* could prove OSIC acted in bad faith.

33. OSIC is therefore entitled to summary judgment on Plaintiff's claims for breach of contract, violations of Chapters 541 (unfair settlement practices) of the Texas Insurance Code, and common law breach of the duty of good faith and fair dealing, based on Plaintiff's inability to meet its burden on causation.

### B. OSIC is Additionally and Independently Entitled to Summary Judgment of Plaintiff's Bad Faith Claim because the Dispute is at Most a *Bona Fide* Coverage Dispute.

[11] *See* Exhibit U Deposition of Jim Irmiter at 115:1-8.
[12] *See* Exhibit U Deposition of Jim Irmiter at 116:15-23.

34. An insurer's failure to pay a covered claim is ordinarily a breach of contract that does not alone entitle a plaintiff to mental anguish or exemplary damages. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 17 (Tex. 1994). "The threshold of bad faith is reached when a breach of contract is accompanied by an independent tort." *Id.*

35. A cause of action exists for the breach of the duty of good faith and fair dealing when "there is no reasonable basis for a denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay." *Arnold v. National County Mut. Fire Ins.*, 725 S.W.2d 165, 167 (Tex. 1987). The common law and statutory standards are identical--when there is no merit to a common law bad faith claim asserting a wrongful denial of insurance benefits, any statutory claims for bad faith under the Texas Insurance Code must also fail. *See Higginbotham v. State Farm Mut. Auto Ins. Co*., 103 F.3d 456, 460 (5th Cir. 1997) ("Although these claims are individual causes of action which do not depend on each other for support, Texas courts have clearly ruled that these extra-contractual tort claims require the same predicate for recovery as bad faith causes of action in Texas.")

36. In considering whether to grant a summary judgment on bad faith, a court should distinguish between the evidence supporting the contract issues and the tort issue. *Lyons v. Miller Cas. Ins. Co.,* 866 S.W.2d 597, 601 (Tex. 1993). The issue of bad faith does not focus on whether the claim was valid. *Id.* "The evidence must relate to the tort issue of [whether the insurer's liability had become reasonably clear], not just to the contract issue of coverage." *Id.* at 600.

37. Whether the insurer's liability had become reasonably clear must be judged by the facts before the insurer at the time the claim was denied. *Viles v. Sec. Nat'l Ins. Co.,* 788 S.W.2d 566, 567 (Tex. 1990). Evidence that shows only a bona fide coverage dispute does not, standing alone, demonstrate bad faith. *State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 448 (Tex. 1997); *Moriel,*

879 S.W.2d at 17. "Nor is bad faith established if the evidence shows the insurer was merely incorrect about the factual basis for its denial of the claim, or about the proper construction of the policy." *Moriel,* 879 S.W.2d at 18. "A simple disagreement among experts about whether the cause of loss is one covered by the policy will not support a judgment for bad faith." *Id.*

38. Here, the ongoing disagreement between the parties is the scope of damages caused by a July 8, 2024 hurricane. OSIC inspected Plaintiff's property and identified covered damage and issued payment.

39. The parties' disagreement over the scope of damages caused by the July 8, 2024 storm has continued into litigation. Plaintiffs have not produced any evidence or retained an expert to testify as to why OSIC's investigation was unreasonable. Plaintiff fails to provide any expert testimony, proof of standard industry practices, or legal authority to support its claim that OSIC's actions were unreasonable. *Humphries v. State Farm Lloyds*, No. 3:20-CV-01163, 2022 WL 705860, at *2 (N.D. Tex. Mar. 9, 2022) (quoting *Nino v. State Farm Lloyds,* No. 7:13-CV-318, 2014 WL 6674418, at *6 (S.D. Tex. Nov. 24, 2014)); *Main St. Baptist Church v. Church Mut. Ins. Co.*, No. 6:23-CV-124-JDK, 2024 WL 4101938, at *6 (E.D. Tex. July 23, 2024)

40. The current dispute does not give rise to an independent tort or damages separate and apart from any denial of Policy benefits, and this is fatal to Plaintiff's extra-contractual claims. These facts are similar to *Nino v. State Farm Lloyds* and *Kahlden v. Safeco Ins. Co.,* among others, where the insurer was entitled to summary judgment on the plaintiff's bad faith claims. *Nino v. State Farm Lloyds,* No. 7:13-CV-318, 2014 U.S. Dist. LEXIS 163993 (S.D. Tex. 2014); *Kahlden v. Safeco Ins. Co. of Ind.,* No. H-10-2001, 2011 U.S. Dist. LEXIS 168134 (S.D. Tex. 2011). In *Nino,* the plaintiff argued (as here) that the investigation of her claim was unreasonable because the

insurer's two inspections of the property were inadequate and results-oriented. *Nino,* 2014 U.S. Dist. LEXIS 163993 at *10. The Court found:

> There *is* ample evidence that Mr. Crump and Mr. Wallis, based on their expertise and inspection of the property, determined the property damage was not caused by hail, contrary to the findings by Plaintiffs adjusters. Again, evidence that shows the insurer was incorrect about the factual basis for its denial of the claim is not evidence of bad faith, nor does a finding of hail damage by one expert prove another expert's contrary finding was based on an inadequate inspection.

*Id.* at *15. The Court refused to permit the bad faith claims to proceed based on the plaintiff's lay opinion alone. "Indeed, adopting such amorphous position, whereby any plaintiff can impute bad faith to an insurer by opining about the unreasonableness of an adjuster's actions, can only be problematic and result in absurd results." *Id.* at *16.

41. Similarly, in *Kahlden,* the Court addressed a plaintiffs expert's estimate of damages, finding "a difference between the Parties' assessments of damage is not evidence of bad faith." *Kahlden,* 2011 U.S. Dist. LEXIS 168134 at *18. The Court also rejected the plaintiff's criticism of the insurer's handling of the claim, finding "the fact that an insurance company would agree to perform multiple assessments, resulting in additional payments, is not, by itself, evidence of bad faith." *Id.* The Court concluded by holding that the record showed "no more than a bona fide dispute between the damage assessments from Defendant's four inspectors, and the contractors and experts hired by Plaintiffs." *Id.* at *19.

42. Like *Nino* and *Kahlden,* the current dispute is, at most, a contractual dispute. According to Plaintiff and its representatives, the property's exterior, roof, windows, and interior require replacement/repair as a result of a July 8, 2024 hurricane. OSIC inspected the property multiple times and paid Plaintiff for the damage it observed. The mere fact that Plaintiff asserts OSIC underpaid the claim does not rise to the level of bad faith. In addition, OSIC investigated the claim and issued payment. The discovery process in this litigation has revealed that the damage observed

to the property predates the date of loss-perhaps by several years. This is clearly exhibited in the prior repair invoices, the historical imagery and prior claims.

43. The parties disagree on the cause, scope, and cost of repair for some of the alleged damages to Plaintiff's property. This mere disagreement is nothing more than a bona fide coverage dispute, and Plaintiff's bad faith claims against OSIC (violations of Chapters 541 and 542 of the Texas Insurance Code and breach of the duty of good faith and fair dealing) should be dismissed.

44. Further, Plaintiff also alleges that Defendant's conduct in this case was committed knowingly and recklessly. Plaintiff claims it is entitled to treble damages under the Texas Insurance Code and exemplary damages under the common law. Because there is no culpable conduct to support a finding on bad faith, Plaintiff cannot recover treble or exemplary damages.

45. Plaintiff also alleges OSIC misrepresented material facts to Plaintiff. However, the only person who communicated with OSIC during the handling of the claim was Ms. Delgado with Plaintiff's counsel, NIA. Now NIA is representing Plaintiff in this lawsuit. Accordingly, OSIC is entitled to summary judgment as a matter of law of Plaintiff's claims for treble or exemplary damages.

### C. PLAINTIFF'S CLAIMS UNDER THE PROMPT PAYMENT OF CLAIMS ACT FAIL

46. Finally, Plaintiff asserts a claim for violation of Section 542.058 of the Prompt Payment of Claims Act. OSIC is entitled to summary judgment on that claim.

47. Section 542.058 provides that an insurer must make payment on the claim within 60 days after receiving all items, statements, and forms reasonably requested. TEX. INS. CODE § 542.058. As stated above, OSIC inspected the property and estimated to replace the damage covered by the policy. Moreover, because Plaintiff's contract claim fails for the reasons explained above, there can be no additional payment owed. OSIC is therefore entitled to summary judgment on all claims brought under Section 542.058 of the Texas Insurance Code.

## CONCLUSION

Defendant Ohio Security Insurance Company is entitled to summary judgment on each and every claim Plaintiff has asserted in this lawsuit. Therefore, Ohio Security Insurance Company respectfully asks the Court to grant this motion for summary judgment, dismiss all claims asserted in this lawsuit, and for such other and further relief to which it may be justly entitled.

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.

By: */s/Kolby J. Keller*
Jonathan R. Peirce
State Bar No. 24088836
Federal Bar No. 2303246
THOMPSON COE COUSINS & IRONS, LLP
4400 Post Oak Parkway, Suite 1000
Houston, Texas 77027
Telephone: (713) 403-8210
jpeirce@thompsoncoe.com

~and~

Kolby J. Keller
State Bar No. 24119382
Federal Bar No. 3676114
kkeller@thompsoncoe.com
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201
Telephone: (214) 871-8200
Facsimile: (214) 871-8209

**ATTORNEYS FOR DEFENDANT**

# CERTIFICATE OF SERVICE

I hereby certify that, on October 13, 2026, a true and correct copy of the foregoing document was electronically served on counsel for Plaintiff below in accordance with the Federal Rules of Civil Procedure:

NATIONAL INSURANCE ADVOCATES, LLP
Anthony Pastor, Esq
Erik Barnard
6330 Manor Lane, Suite 200
Miami, FL 33143
Telephone: 833-701-4110
service@nia.law
anthony@nia.law
***Counsel for Plaintiff***

Joseph Varona**,**
National Insurance Advocates, PLLC
5900 Balcones Drive, Ste 100
Austin, TX 78731
Telephone: 833-701-4110
service@nia.law
***Co-Counsel of Plaintiff***

*/s/ Kolby Keller*
Kolby J. Keller